## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEAN BASTILLA; DAVE HEINE; and MATTHEW STEINKAMP, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 06-CV-0150-MJR |
| THE VILLAGE OF CAHOKIA, ILLINOIS; THE CAHOKIA BOARD OF FIRE AND POLICE COMMISSION- ERS; DEAN SAMPLE; JEROME CALLAHAN; REV. WOOD; and HAROLD R. WATSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Defendants in this 42 U.S.C. § 1983 case have filed a motion for summary judgment based on a qualified immunity defense. (Doc. 81.) Because Plaintiffs raise issues of fact as to whether a constitutional right was violated, and because the Defendants fail to meet their burden of persuasion on the second part of the qualified immunity analysis, the Court will deny Defendants' motion.

## I.      Background

Plaintiffs were police officers in the Police Department of Defendant Village of Cahokia, Illinois, with Steinkamp beginning his service in 1994, Heine in 1997 and Bastilla in 2002. Steinkamp was an officer of the Fraternal Order of Police, the police officers' union, and Bastilla and Heine were members. Defendant Watson is the Chief of Police; before being appointed to his position by then-newly-elected mayor Frank Bergman in April 2003, he was a sergeant on the force. Defendants Sample, Callahan and Wood are members of Defendant Cahokia Board of Fire and Police Commissioners. In hearings before the Board on October 26, 2003 and December 23, 2003,

on the complaint of Watson, Plaintiffs were terminated from their positions as police officers. The board stated that it based its decision on the fact that Plaintiffs resided outside the village limits despite a requirement to reside within village limits.

Plaintiffs believe that the stated reason for the termination, the residency requirement, was a pretense to terminate them for their opposition to the residency requirement in union meetings, a residency requirement that had become political due to the support of the newly elected mayor, newly promoted Watson, and the chairman of the Board, Callahan. Plaintiffs then brought this 42 U.S.C. § 1983 case against Watson, the Village and the Board and its members, seeking damages for retaliatory termination in violation of their rights under the First Amendment. The case was stayed in this Court for several years while collateral but related state cases were resolved.

## II.    Standard

The standard on a summary judgment motion is well established. Courts should grant summary judgment to the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).** The party that moves for summary judgment "bears the initial responsibility of informing a court of the basis for its motion," meaning that it must identify the materials listed in Rule 56(c) that "demonstrate the absence of a genuine issue of material fact." ***Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).** The moving party may do so by "pointing out . . . that there is an absence of evidence to support the non-moving party's case." ***Id.* (quoting *Celotex Corp.*, 477 U.S. at 325).**

2

Once the moving party satisfies its burden, "the non-moving party must do more than raise a metaphysical doubt as to the material facts" if it wants to defeat summary judgment. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-moving party cannot rest on the pleadings but must respond, with affidavits or other materials under Rule 56(c), setting forth specific facts that show a genuine issue for trial. **Fed. R. Civ. P. 56(e);** *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must also be careful as to what Rule 56(c) materials it proffers to the Court, as "conclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1999) (citing *Darnell v. Target Stores*, 16 F.3d 174, 176–77 (7th Cir. 1994)). The non-moving party does have one benefit, though, in that the Court must construe the Rule 56(c) materials in the non-moving party's favor, including all reasonable inferences from those materials. *Keri*, 458 F.3d at 628.

### III.   <u>Analysis</u>

As Plaintiffs raise issues of fact as to whether a constitutional right has been violated, summary judgment is inappropriate.

The defense that Defendants raise, qualified immunity, is a defense available to government officials that perform discretionary functions. The defense balances two important policy concerns: holding governmental officials accountable for the irresponsible exercise of power without exposing them to harassment, distraction, or liability when performing their duties

3

reasonably. *Pearson v. Callahan*, **129 S. Ct. 808, 815 (2009).** The immunity comes into play if the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* **(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).** This immunity is not simply from liability but from suit. *Id.* As "[t]he driving force behind creation of the qualified immunity doctrine" was to resolve insubstantial claims before discovery began, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."[1] *Id.* **(internal quotation marks omitted) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)).** Traditionally, qualified immunity is evaluated under a two-pronged test, evaluated in order. *Id.* **at 815 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).** First, the Court looks to see if, depending on the stage of the litigation at which the defense is asserted by motion, the plaintiff has alleged enough facts or the record supports enough facts to conclude that a constitutional right has been violated. *Id.* **at 815–16 (citing *Saucier*, 533 U.S. at 201).** Second, the Court looks to see if that constitutional right is one that has been clearly established at the time of the misconduct. *Id.* **at 816 (citing *Saucier*, 533 U.S. at 201).** *Pearson* changed the mandatory nature of the order of inquiry, allowing the Court to exercise discretion in deciding which prong of the test to examine first. *See id.* **at 821 ("Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case.").**

---

[1] Given the policy behind the qualified immunity defense, the Court notes that it is odd that defendants raised the defense a mere three months before trial.

Taking a cue from *Pearson*, Defendants urge the Court to evaluate the issue under the second prong. Oddly enough, however, they do not argue the second prong. Even though they say that they are arguing that the Defendants did not violate a clearly established Constitutional right, the only arguments they actually raise are the following: first, that the supposed protected speech was part of the Plaintiffs' job duties and is therefore not protected; second, that the speech addressed matters of private, not public, concern, and is therefore not protected; and third, that the evidence demonstrates that the motivation behind Plaintiffs' termination was "because Plaintiffs failed to comply with a residency requirement that Defendants believed was in force and effect and because Plaintiffs made misleading statements to the Police Chief about their residency." (Mem. of Law 4.)

These arguments attack two of the three elements that the Plaintiffs must prove in their § 1893 claim. ***See Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) ("To prevail on their § 1983 retaliation claim, the [plaintiffs] need to prove (1) that they were engaged in constitutionally protected speech . . . and (3) that the adverse actions were motivated at least in part as a response to the plaintiffs' protected speech." (citing *Mosely v. Bd. of Educ. of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006))).** Defendants are not arguing that the asserted violated constitutional right—employment retaliation due to protected speech—was not clearly established. Instead, the Defendants argue that there was no constitutional violation in the first place, pointing to both their version of events in the record and arguing that Plaintiffs version of events would not be a constitutional violation even if true. Defendants' arguments are really first prong arguments in second-prong-argument clothing. Accordingly, the Court will treat their argument under the first prong of *Saucier*.

The Seventh Circuit recently examined a First Amendment retaliation case involving a police union. ***Bivens v. Trent*, No. 08-2256, 2010 WL 22369 (7th Cir. Jan. 6, 2010).** Bivens was

assigned to be range officer in charge of a firing range of the Illinois State Police and was in charge of all aspects of the range's operation, including keeping the range clean and in good working order. *Id.* **at \*1.** During his tenure at the range, he contracted lead poisoning. *Id.* After reporting the lead contamination up the chain of command, he also reported his concerns to his union. *Id.* The range was closed for cleanup for several years, and the cleanup received media attention. *Id.* The Illinois State Police soon terminated Bivens, and he brought suit accusing them of retaliatory termination due to his report to the union causing the range closure, which in turn embarrassed the department. *Id.* **at \*2.** In defense, the *Bivens* defendants argued a lack of a Constitutional violation. The *Bivens* defendants argued that Bivens was foreclosed under the doctrine of *Garcetti v. Ceballos*, **547 U.S. 410 (2006),** which holds that there is no Constitutional violation when the retaliated speech was part of the plaintiff's official job duties. ***Bivens*, 2010 WL at \*3 (citing *Garcetti*, 547 U.S. 410).** The defendants also argued that Bivens's grievance was purely private and was thus not protected as a matter of public concern. *Id.* **at \*3.** The Seventh Circuit agreed on both counts. First, the condition of the firing range was part of Bivens's job, so he had a duty to report on its condition. *Id.* **at \*4.** Because the speech was part of his job duties, it was unprotected speech. Second, the nature of the grievance he filed was primarily private; even though the matter was important to the public, because "the content, form, and context of the grievance demonstrate that it was filed for the sole purposes of securing his own medical treatment and ensuring he had a safe working environment." *Id.* **at \*5.**

The Defendants make the same arguments here. First, they argue that the Plaintiffs' speech regarding the residency requirement was a part of their job duties and so they were not speaking "as citizens" but as public officials. ***See Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007) ("[P]ublic employees speaking 'pursuant to their official duties' are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content**

of their speech." (quoting *Garcetti*, 547 U.S. at 421)). This argument, however, is not supported by any evidence on the record. No part of Plaintiffs' duties, as police officers, included informing the public or other police officers about changes in the residency requirement. Granted, Steinkamp, as a union official, had duties to tell union members and advocate on their behalf against the residency requirement, but being a union officer was not a duty of his employment with the Illinois State Police, nor were Defendants able to terminate Steinkamp from his position within the union. The Plaintiffs' speech as union officials or members, then, is not a part of their job duties, and they cannot be barred from the protections of the First Amendment on that account. ***See also Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006) ("Because [the plaintiff]'s comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff—his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer—the Supreme Court's recent decision in *Garcetti v. Ceballos* is inapposite." (citation omitted)).**

Second, Defendants argue that the Plaintiffs did not speak on matters of public concern, ***see Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007)**, and thus are not entitled to First Amendment protection. In determining whether the Plaintiffs spoke on a matter of public concern, the Court looks not only at the content of the speech to see if the matter was of interest to the public but also "delve[s] deeper" to see whether the point of the speech was to further some "purely private interest." ***Kokinnis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999).** Although the Defendants point to the fact, supposedly collaterally estopped,[2] that Plainitffs resided outside the village limits and therefore had a personal interest in the matter, the Plaintiffs point to a

---

[2] The Court need not decide whether the Plaintiffs are in fact barred by collateral estoppel from arguing that they met the residency requirement. Even assuming that they are barred, the summary judgment record indicates enough issues of fact outside the residency requirement for estoppel not to matter.

number of facts indicating that they may have been concerned about the public when speaking out on the residency requirement. A few examples include that police officers and their families, while off duty living in Cahokia, were threatened with physical harm by those who the officers may have encountered on their beat; also, a squad car, which was municipal property, was damaged outside an officer's home. Speech on matters affecting law enforcement can be matters of public concern even if motivated in part by personal concerns. *See, e.g., **Gustafson v. Jones**, 290 F.3d 895, 913 (7th Cir. 2002).* Because there are two stories supported by the summary judgment record regarding whether the speech was a matter of public concern, Plaintiffs are able to raise an issue of fact.

The last relevant argument that Defendants make is that the reason behind the termination was not advocating for the residency requirement but instead was terminated only because they violated the residency requirement and made misleading statements with respect to their residency. In support, Defendants point to the prior decisions of the Illinois courts, which they claim the Plaintiffs cannot dispute under the doctrine of collateral estoppel, finding that the Plaintiffs failed to meet the Cahokia residency requirement for its employees.[3] They also point to statements of the Plaintiffs that contradict the state court findings with respect to residency as the misleading statements.

Because of the standard that the Court must use on summary judgment, this argument fails as Plaintiffs point to enough evidence on the record to indicate that a Constitutional right may have been violated. At the very least, Plaintiffs point to discovery that they were active members of the Fraternal Order of Police, that they voiced their opposition to the residency requirement, and that Watson and Callahan supported the position of Bergman on a residency requirement and campaigned for him. Plaintiff also show that the record indicates that during one

---

[3] Again, the Court need not decide whether the Plaintiffs are in fact barred by collateral estoppel; the Plaintiffs point to enough evidence that could establish a partial retaliatory motivation, even with collateral estoppel in place on the failure to abide by the residency requirement or the Plaintiffs misleading statements.

of these F.O.P. meetings before Watson's promotion, Watson told Plaintiffs in the context of their advocacy against the residency requirement "Don't make me do something that you guys are going to regret." Plaintiffs also point to discovery indicating that the residency requirement was not enforced on all police officers, just the Plaintiffs, even though several other police officers did not meet the residency requirement and were known to do so. Considering that the Plaintiffs openly opposed the residency requirement in the F.O.P. meetings, a reasonable inference can be drawn that their vocal opposition to the requirement in union meetings was a motivating factor in their termination, such that their failure to meet the residency requirement was not the sole reason for termination. The Court can examine this inference at this stage, of course, because it is supposed to draw reasonable inferences in favor of non-movants on summary judgment. Based on these facts and inferences, a reasonable fact finder could conclude that the speech of the Plaintiffs was at least a motivating factor in the termination.

So now the Court has been presented two different factual scenarios supported by the record. One is that Plaintiffs were terminated because they spoke out against a residency policy; the other is that they were terminated because of failing to comply with the same residency policy and because of uttering misleading statements. "Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Washington v. Haupert*, **481 F.3d 543, 550 (7th Cir. 2007).** Deciding which one is true is the fact-finder's job, which in this case is the jury.

### IV.    Conclusion

Because the Plaintiffs demonstrate that issues of material fact exist as to whether a constitutional right was violated, the Court **DENIES** Defendants' motion for summary judgment (Doc. 81). Because the Defendants' argument was actually an argument under the first prong of the *Saucier* analysis and not the second, the Court does not decide, as a matter of law, the issue of

qualified immunity. Defendants are free to raise the defense again by an appropriate trial motion if the evidence warrants it.

**IT IS SO ORDERED.**

**DATED January 12, 2010.**

<u>**s/ Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**United States District Judge**